UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TARA ANN WELCH,

        Plaintiff,

v.                                          Case No. 1:12-cv-1349
                                            Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                     /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on October 1, 1975 (AR 120).[1] She alleged a disability onset date of June 1, 2006 and was insured for benefits through December 31, 2010 (AR 120). Plaintiff completed four or more years of college and listed previous employment as a CSR/Child Family Specialist, a home visitor, an independent living specialist and a hospital registration clerk (AR 126). Plaintiff identified her disabling conditions as: degenerative disc disease; gout; lupus; possible rheumatoid arthritis; pitting edema; "liver is failing"; "kidneys are allowing too much protein through"; diabetic; metabolic syndrome; severe depression; and other conditions not enumerated (AR 124, 128). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 13, 2011 (AR 19-30). This decision, which was later

---

[1] Citations to the administrative record will be referenced as (AR "page #").

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2006

3

through her date last insured of December 31, 2010 (AR 21). Second, the ALJ found that plaintiff had severe impairments of: fibromyalgia; degenerative disc disease; dependent bilateral edema; obesity; depression; and anxiety disorder (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 33). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine), 4.11 (chronic venous insufficiency) or 14.09 (inflammatory arthritis) (AR 22).

The ALJ decided at the fourth step that through the date last insured:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she requires a sit/stand option. She can never climb ladders, ropes, or scaffolds and can occasionally stoop, kneel, crouch, and crawl. She can only occasionally, but not repetitively, twist her spine. She must have a footstool available when she is seated, and, at breaks, she must be able to elevate her feet to waist height. She must avoid exposure to unprotected heights and avoid all exposure to explosives. The claimant is limited to occasional interaction with coworkers and the public. She is able to understand, remember, and carry out multi-step instructions. However, she is unable to perform work that requires directing others, abstract thought, or planning. The claimant should have limited proximity to others in order to minimize distractions, and she should work in a low-stress job, defined as having only occasional decision-making or judgment.

(AR 23). The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 28)

At the fifth step, the ALJ determined that plaintiff could perform a range of work in the national and regional (Michigan) economies (AR 28-29). Representative occupations located in Michigan include: telephone quotation clerk/information clerk (19,861 jobs); surveillance systems monitor (2,790 jobs); and light assembler (23,624 jobs) (AR 29). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2006 (the alleged onset date) through December 31, 2010 (the date last insured) (AR 30).

4

## III. ANALYSIS

Plaintiff raised one general issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources and misapplied the law.**

### A. Legal standard

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§

404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### B. Donald Cousineau, D.O. (primary care physician)

The ALJ summarized Dr. Cousineau's opinion as follows:

> The claimant's primary care provider, Donald Cousineau, D.O., provided a medical source statement on December 9, 2010. In it, he opined the claimant could sit for 10 to 15 minutes at one time and stand for 5 to 10 minutes at one time, sit for a total of less than two hours and stand/walk for a total of less than two hours in an eight-hour workday. The doctor opined the claimant could occasionally lift less than 10 pounds and would need to shift positions at will. He stated the claimant would need unscheduled breaks, and she could never twist, stoop, crouch, climb ladders, or climb stairs. Dr. Cousineau opined the claimant had significant limitations performing repetitive reaching, handling, and fingering. She would need to elevate her legs greater than 30 degrees for more than 30% of the workday. Finally, the doctor opined the claimant was likely to miss more than four days of work per month and was incapable of even low-stress jobs. (Ex. 13F). Although it is clear from the medical evidence of record the claimant treated regularly with Dr. Cousineau, his treatment notes are unfortunately largely illegible. (Exs. 5F; 16F). Therefore, I cannot determine if this opinion is consistent with the doctor's objective findings and treatment notes. However, this opinion is not consistent with the findings from the consultative examiner or with the overall objective medical evidence. Therefore, I accord this opinion little weight.

(AR 27).

### 1. The ALJ failed to review Dr. Cousineau's records

Plaintiff contends that the ALJ's failure to review Dr. Cousineau's records violate SSR 96-5p. Social Security Rulings (SSR's) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

SSR 96-5p ("Medical Source Opinions on Issues Reserved to the Commissioner") provides in pertinent part:

> Requirements for Recontacting Treating Sources
>
> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p. *See Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 273 (6th Cir. 2010) (SSR 96-5p "identif[ies] two conditions that must both be met to trigger the duty to recontact: 'the evidence does not support a treating source's opinion . . . *and* the adjudicator cannot ascertain the basis of the opinion from the record'") (emphasis in original); *Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157, fn. 3 (6th Cir. 2009) ("an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status"); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("it is not the rejection of

7

the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty"). *See also*, 20 C.F.R. § 404.1512(e) ("[w]e will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources").

Here, the ALJ passed on reviewing Dr. Cousineau's treatment notes because the notes were handwritten and largely illegible, and, as a result, she could not determine if the opinion was consistent with the doctor's objective findings and treatment notes (AR 27). The ALJ also found that the doctor's opinion was "not consistent with the findings from the consultative examiner or with the overall medical evidence" (AR 27). Under these circumstances, the ALJ met the two conditions which triggered her duty to recontact Dr. Cousineau under SSR 96-5p, i.e, the evidence did not support the treating source's opinion and the ALJ could not ascertain the basis of the opinion from the record. *See Ferguson*, 628 F.3d at 273.

Requiring the ALJ to recontact Dr. Cousineau is consistent with the Supreme Court's instruction that "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Neither plaintiff nor her counsel had any control over whether Dr. Cousineau's notes were handwritten or typewritten. The doctor's notes (Exhibits 5F and 16F) were admitted at the hearing without objection or comment as to whether the notes were legible (AR 39). Furthermore, Dr. Cousineau's treatment records form a significant portion of the medical record in this case. The doctor's records reflect plaintiff's treatment from January 3, 2008 through March 14, 2011and consist of 170 pages (AR 351-87, 459-591), or approximately 36% of plaintiff's 467-page medical record in this case (Exhibits 1F through 18F). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should

8

recontact Dr. Cousineau for a clarification of the specific medical records which support his December 9, 2010 medical source statement and re-evaluate his opinions in light of those records.

### 2. The ALJ failed to consider plaintiff's mental impairments

Plaintiff also contends that the ALJ's RFC assessment failed to take into account her significant mental impairments identified by Dr. Cousineau, specifically the doctor's determination that plaintiff's symptoms were severe enough to frequently interfere with attention and concentration needed to perform even simple work tasks (AR 441). In this context, the form defines "frequently" as "34% to 66% of an 8-hour working day" (AR 441).

The ALJ found that plaintiff had severe impairments of depression and anxiety disorder (AR 21). In reaching this determination, the ALJ reviewed a consultative examination by Mary Cullen-Ott, MA, LLP, and Lynn McAndrews, Ph. D., who concluded that plaintiff suffered from major depressive disorder, recurrent, and anxiety disorder (AR 397-402). The ALJ also considered the mental RFC assessment prepared by non-examining DDS consultant Ron Marshall, Ph.D., who reviewed plaintiff's medical records (including the Cullen-Ott/McAndrews report) and concluded that plaintiff: retained the ability to perform rote tasks within medical limitations; was able to follow simple instructions; may work better with brief interactions with others; and may have difficulty retaining complex instructions (AR 419). The ALJ gave great weight to the Dr. Marshall's RFC assessment and moderate weight to the Cullen-Ott/McAndrew report (AR 26-27). The ALJ's RFC determination included numerous restrictions related to plaintiff's mental impairments such as: limiting plaintiff to occasional interaction with coworkers and the public; limited proximity to others in order to minimize distractions; work in a low stress job; avoiding work that requires directing others, abstract thought, or planning; and having only occasional decision-making or

judgment (AR 23). Nevertheless, while it appears that the ALJ reviewed some evidence of plaintiff's mental impairments, this review did not include consideration of Dr. Cousineau's treatment notes or opinions. *See* discussion, *supra*. Accordingly, on remand, the Commissioner should also re-evaluate plaintiff's mental RFC in light of Dr. Cousineau's opinions expressed in the December 9, 2010 medical source statement.

### B. Ruben Peredo, M.D. (rheumatologist)

The ALJ summarized Dr. Peredo's opinion as follows:

> Rheumatologist Ruben Peredo, M.D., provided a medical source statement on December 27, 2010. Dr. Peredo opined the claimant could sit for 5 minutes at one time and stand for 10 minutes at one time, for a total of less than two hours in an eight-hour workday for each. He stated she would need to shift positions at will, could lift 10 pounds or less but only rarely, and she could occasionally twist, but rarely stoop, crouch, climb ladders, or climb stairs. The doctor opined the claimant had significant limitations in doing repetitive reaching, handling, or fingering, and would need to elevate her legs at least 45 degrees for 40% of the workday. Finally, he noted she was likely to miss two days of work per month, and was capable of only low-stress jobs. (Ex. 14F). This opinion is not consistent with the objective medical evidence or the doctor's own rather benign clinical findings. Therefore, I give it little weight.

(AR 27).

The medical source statement at issue is Dr. Paredo's December 27, 2010 "Fibromyalgia Residual Functional Capacity Questionnaire" (AR 445-49). The ALJ's decision did not address plaintiff's treatment history with Dr. Paredo or any of the doctor's clinical findings. Given this record, the ALJ's statement that the doctor's "is not consistent with the objective medical evidence or the doctor's own rather benign clinical findings" without reference to any "clinical findings" fails to meet the requirement that an ALJ give "good reasons" for not crediting the opinion of a treating source. *See Wilson*, 378 F.3d at 545; 20 C.F.R. § 404.1527(c)(2).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should address Dr. Peredo's clinical findings and explain why these findings do not support the doctor's opinions expressed in his December 27, 2010 medical source statement.

### C. Matthew Visconti, M.D. (radiologist and phlebologist)

The ALJ found that plaintiff suffered from a severe impairment of dependent bilateral edema and reviewed this condition under Listing 4.11 (chronic venous insufficiency) (AR 21-22). Plaintiff contends that the ALJ failed to acknowledge the seriousness of her dependent bilateral edema and points out that Drs. Cousineau and Peredo would require plaintiff to elevate her legs 30 to 40 percent of the time. In support of her claim, plaintiff refers to Dr. Visconti's bilateral extremity duplex venous Doppler study performed on May 12, 2010 (AR 486). While Dr. Visconti's study confirmed the diagnosis of dependent bilateral edema, it was negative for superficial venous insufficiency, and he expressed no opinion on how the edema affected plaintiff. [T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about

the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000). *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition"); *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988) (a claimant diagnosed as suffering from dysthymic disorder must establish that the condition is disabling). This claim of error will be denied.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-contact Dr. Cousineau for a clarification of the specific medical records which support his December 9, 2010 medical source statement and re-evaluate his opinions in light of those records, (2) re-evaluate plaintiff's mental RFC in light of Dr. Cousineau's opinions expressed in the medical source statement, and (3) address Dr. Peredo's clinical findings and explain why these findings do not support the doctor's opinions expressed in his December 27, 2010 medical source statement. A judgment consistent with this opinion will be issued forthwith.

Dated: March 12, 2014                          /s/ Hugh W. Brenneman, Jr.
                                                                                     HUGH W. BRENNEMAN, JR.
                                                                                     United States Magistrate Judge